UNITED STATES DISTRICT COURT
OF DELAWARE

CARMEN RECUPERO,                    )
                                    )
Plaintiff,                          )
                                    )
v.                                  )        Case No. _____
                                    )
TQG, INC., NEIL BIAFORE, BOB        )        JURY TRIAL DEMANDED
WILSON, DAN ALBUQUERQUE, MARK       )
BOYLAND, CHRIS ELDER, AND           )
IAN TITUS                           )
                                    )
Defendants.                         )

## **COMPLAINT**

Plaintiff, Carmen Recupero, ("Recupero"), by counsel, hereby brings this lawsuit against

Defendants, TQG, Inc. ("TQG"), Neil Biafore, Bob Wilson, Dan Albuquerque, Mark Boyland,

and Ian Titus, for multiple claims including federal securities fraud, Delaware securities fraud,

fraud in the inducement, and breach of contract. Ms. Recupero has attempted to reach out on

multiple occasions with TQG unwilling to resolve this matter. As a result, Mrs. Recupero has

been forced to bring this lawsuit to seek damages for the conduct of TQG and the remaining

Defendants. Accordingly, Recupero states as follows:

### **PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Recupero, is an individual domiciled in Christiansburg, Virginia.

2. Defendant, TQG, is a Delaware Corporation, and upon information and belief, TQG, has

   its principal place of business located in Palo Alto, California.

3. At all times relevant to this suit, Defendants Biafore, Wilson, Albuquerque, Boyland and

   Elder were all officers and/or directors of TQG.

1

4.  This Court has subject matter jurisdiction over TQG with regard to Count I under 28 U.S.C. § 1331, since it presents a federal question under the Securities Exchange Act of 1934.

5.  This Court has subject matter jurisdiction over TQG with regard to the remaining claims under 28 U.S.C. §1332 since Recupero is domiciled in Virginia, TQG is domiciled in Delaware with its principal place of business in California, Biafore is domiciled in California, Wilson is domiciled in Massachusetts, Albuquerque is domiciled in New Jersey, Boyland is domiciled in New Jersey, Titus is domiciled in Tennessee, and the amount in controversy exceeds $75,000.

6.  In the alternative, this Court has subject matter jurisdiction over the remaining claims under 28 U.S.C. §1367, since the rights are so related to the federal question presented by the federal securities fraud claim that these claims form part of the same case or controversy under Article III of the United States Constitution.

7.  This Court has personal jurisdiction over Defendants because Delaware is the state of its incorporation and the Parties consented to Delaware's jurisdiction in the Simple Agreement for Future Equity, executed on August 21, 2025, which serves as the basis for this Complaint.

8.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because TQG state of incorporation is Delaware, and therefore TQG is subject to the Court's personal jurisdiction, and the Parties consented to Delaware as the appropriate venue in the Simple Agreement for Future Equity, executed on August 21, 2025, which serves as the basis for this Complaint.

**FACTS**

9. Plaintiff Recupero is a well-known realtor and businesswoman in the Christiansburg, Virginia area.

10. Defendant TQG, also referred to as The Quik Group, is a corporation founded under the laws of Delaware.

11. Recupero discovered TQG through LinkedIn, where TQG advertised the need for investors and board members. Attached as Exhibit A is a true and accurate depiction of one of their advertisements from LinkedIn displayed for viewers located in Virginia.

12. After inquiring about the need for investors, Recupero received phone calls from TQG about this investor opportunity from Neil Biafore, a chairman and CEO of TQG.

13. Neil Biafore also met with Recupero through a zoom meeting, and in the meeting, he discussed why she should invest and the benefits she would receive including a salary as an advisory board member and shares in the company.

14. Included in this discussion was a slide show presentation detailing TQG's business plan and information about TQG.

15. This presentation also listed as TQG's leadership team Biafore as "Chairman & CEO," Wilson as "Board/President," Albuquerque as "CFO," Boyland as "Board/Legal," and Elder as "CRO."

16. Defendant reached out again several times, asking Recupero to buy shares in TQG.

17. Recupero agreed to buy shares in TQG and signed a package of documents containing a Simple Agreement for Future Equity ("SAFE"), an Equity Agreement for Service ("EASE"), and an Employment Agreement detailing her role and compensation as an advisory board member (collectively the "Contracts"). Attached as Exhibit B are true and

accurate copies of the Contracts hat Recupero, who signed with her maiden and professional name of Carmen Elliott, and Neil Biafore, on behalf of TQG, signed to create a contractual agreement.

18. TQG through representatives both told Recupero and explicitly mentioned in the EASE agreement that once Recupero paid $50,000, she would receive 481,928 shares in the Company within thirty days of the Agreement's date. See Exhibit B.

19. In the Employment Agreement, TQG guaranteed Recupero a salary of $60,000 per year, to be paid in accordance with TQG's payroll schedule, upon payment for her shares in accordance with the EASE document. See Attachment B.

20. On August 21, 2025, Recupero paid a sum of $50,000 to TQG through the Citi Bank Wiring information provided by TQG.

21. However, after both parties signed the Contracts and Recupero paid $50,000 investment to TQG, TCQ has failed to pay Recupero her salary or even respond or communicate with Recupero at all.

22. Recupero reached through email, attempting to get information on why TQG had yet to comply with the agreement. Attached as Exhibit D are true and accurate copies of the emails sent by Recupero to TQG.

23. Recupero has attempted to reach out on multiple other occasions to receive communication about her salaried position and payment from TQG.

24. Recupero has not received any payment for her salaried position from TQG.

25. Recupero has not been able to participate as an advisory board member for TQG.

26. Recupero has not received any follow up communications at all from TQG.

### COUNT I
### FEDERAL SECURITIES FRAUD
### VIOLATION OF SECURITIES AND EXCHANGE ACT OF 1934
### (Against TQG)

27. Recupero realleges and incorporates the preceding paragraphs by reference.

28. Under the Securities Act of 1934, it is unlawful for a person or business "(1) to employ any device, scheme, or artifice to defraud, or (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

29. Further, the Supreme Court, in applying the ruling from *Birnbaum v. Newport Steel Corp., supra.*, ruled that a private cause of action for damages exists under Rule 10b-5 listed above. *Blue Chip Stamps v. Manor Drug Stores*, 95 S. Ct. 1917, 1923 (1975).

30. In the present case, TQG offered Recupero ownership shares in its company, a promise of dividend payments, and salaried position as an advisory board member in exchange for Recupero's investment of $50,000.00.

31. Following the Parties execution of the Contracts, TQG failed to pay Recupero any salary payments or dividends that she was owed under the Contracts.

32. TQG further failed to involve Recupero as an advisory board member and has been entirely non-communicative since receipt of Recupero's investment.

33. On information and belief, TQG never intended to provide Recupero with the represented position, salary, or compensation, but rather misrepresented this information to induce her to invest $50,000.00 in their company.

34. Recupero reasonably relied on TQG's misrepresentations and transferred to TQG the $50,000.00 investment on August 21, 2025.

35. As a result of Recupero's reliance upon TQG's misrepresentations Recupero suffered actual damages of $50,000.00.

36. Therefore, TQG has violated the Federal Securities Act of 1934 by intentionally misrepresenting material facts in the offering of securities to Recupero, and as such Recupero is entitled to recover her actual damages of $50,000.00.

37. Recupero is also entitled to recovery of costs and attorney's fees as expressly provided as a remedy in the Federal Securities Act of 1934.

## COUNT II
## DELAWARE SECURITIES FRAUD
## VIOLATION OF 6 Del. C. § 73-605
## (Against TQG, Biafore, Wilson, Albuquerque, Boyland, and Titus)

38. Recupero realleges and incorporates the preceding paragraphs by reference.

39. Under  6 Del. C.§ 73-605, a civil cause of action exists against any person who offers or sells a security "by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they are made, not misleading." 6 Del. C. § 73-605(a).

40. Furthermore, this section provides that "[e]very person who directly or indirectly controls a seller or buyer liable under subsection (a) of this section, every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such seller or buyer who materially aids in the sale,

and every broker-dealer or agent who materially aids in the sale or purchase are also liable jointly and severally with and to the same extent as the seller or buyer, unless the nonseller or nonbuyer who is so liable sustains the burden of proof that the person did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable." 6 Del. C. § 73-605(b).

41. As indicated in Count I, TQG offered Recupero ownership shares in its company, a promise of dividend payments, and salaried position as an advisory board member in exchange for Recupero's investment of $50,000.00.

42. TQG's employees and officers Biafore, Wilson, Albuquerque, Boyland, Elder, and Titus were all directly involved in the making of such offers and representations.

43. Biafore, Wilson, Albuquerque, Boyland, Elder, and Titus were specifically listed as TQG's "Leadership Team" on the slide show presentation that Biafore gave to Recupero while making such offerings and representations.

44. Following the Parties execution of the Contracts, TQG failed to pay Recupero any salary payments or dividends that she was owed under the Contracts.

45. TQG further failed to involve Recupero as an advisory board member and has been entirely non-communicative since receipt of Recupero's investment.

46. On information and belief, TQG, Biafore, and Titus never intended to provide Recupero with the represented position, salary, or compensation, but rather misrepresented this information to induce her to invest $50,000.00 in their company.

47. Recupero reasonably relied on these misrepresentations and transferred to TQG the $50,000.00 investment on August 21, 2025.

7

48. As a result of Recupero's reliance upon these misrepresentations Recupero suffered actual damages of $50,000.00.

49. Furthermore, Recupero is entitled to the recover her reasonable costs and attorneys' fees, as well as interest at the legal rate from the date of payment of her investment, as set forth under 6 Del. C.§ 73-605(a)(2). 6 Del. C. § 73-605(b).

50. As such, TQG, Biafore, Wilson, Albuquerque, Boyland, Elder, and Titus all have violated 6 Del. C.§ 73-605 of the Delaware Code and are thus jointly and severally liable to Recupero.

**COUNT III**
**BREACH OF CONTRACT**
**(Against TQG)**

51. Recupero realleges and incorporates the preceding paragraphs by reference.

52. Recupero and TQG entered into a binding employment contract with TQG, Inc, guaranteeing her a salaried position for $60,000 per year. See Exhibit C.

53. According to the Agreement, Recupero was supposed to start the salaried position as soon as TQG received Recupero's investment of $50,000. See Exhibit C.

54. Under the Employment Agreement, Recupero was to be paid her salary in accordance with TQC's normal payroll schedule.

55. Despite Plaintiff's having paid the $50,000 to TQG on August 21, 2025, TQG has failed to pay Recupero any of the salary payments guaranteed under the Employment Agreement.

56. TQG, despite Recupero's reasonable efforts, has further failed to allow Recupero to perform any of the duties associated with her role as an advisory board member.

57. As such, by failing to fulfill any of its obligations under the Employment Agreement, TQG has materially breached the Employment Agreement.

58. By virtue of TQG's breach, Recupero is entitled to recover damages in an amount of at least of $50,000, representative of the salary payments owed to Recupero as of the date of this Complaint.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff respectfully asks the Court to grant the following relief:

(a) judgment in Plaintiff's favor in all respects;

(b) an award of compensatory damages in an amount to be determined at trial;

(c) an award of costs and attorneys' fees pursuant to the Federal Securities Act; and

(d) any other relief this Court deems just and appropriate.

Dated: June 16, 2026                      Respectfully submitted,

/s/ David Holloway
David Holloway, Esq. (DE Bar No. 5762)
**AMBURN LAW**
1504 N. Broom Street, Suite 1
Wilmington, DE 19806
Phone: (302) 357-9323
dholloway@amburnlaw.com

*Counsel for Plaintiff*

/s/Jacob P. East
Jacob P. East, Esq. (VSB No. 96959)
Andrew P. Connors, Esq. (VSB No. 80248)
DARKHORSE LAW PLLC
307 Market St, Ste 203
Roanoke, VA 24011
Phone: (800) 279-4292

Fax: 540-301-6460
jacob@darkhorse.law
andrew@darkhorse.law

*Counsel for Plaintiff*
*Pro Hac Vice Motions Forthcoming*